People v Traylor (2022 NY Slip Op 02960)

People v Traylor

2022 NY Slip Op 02960

Decided on May 03, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 03, 2022

Before: Manzanet-Daniels, J.P., Gesmer, Moulton, Mendez, Higgitt, JJ. 

Ind. No. 2853/17 Appeal No. 15872 Case No. 2019-1993 

[*1]The People of the State of New York, Respondent,
v
Jamine Traylor, Defendant-Appellant.

Justin C. Bonus, Forest Hills, for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Sylvia Wertheimer of counsel), for respondent.

Judgment, Supreme Court, New York County (Abraham L. Clott, J.), rendered November 8, 2018, as amended November 21, 2018, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree (two counts) and menacing in the second degree, and sentencing him, as a second felony offender, to an aggregate term of 3½ to 7 years, unanimously affirmed.
The verdict was supported by legally sufficient evidence, and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determinations. Evidence that defendant chased a fruit stand vendor around his cart while defendant shouted and waved a golf club and broken bottle established, among other things, the requisite intent for each of the charges (see People v Carter, 201 AD3d 551 [1st Dept 2022]). The record also supports the jury's rejection of the defense of intoxication.
The court properly denied defendant's suppression motion. The police had reasonable suspicion upon which to stop defendant. An anonymous call about a fight, which stated the caller's firsthand basis of knowledge, was corroborated by what the officers saw at the scene and heard from witnesses before taking any police action. In particular, defendant was holding a golf club and a broken bottle the first of which corresponded to the metal object mentioned in the 911 call. Accordingly, the police properly approached defendant, told him to drop the golf club and broken bottle he was holding, and detained him for approximately 10 minutes, during which time he remained uncuffed, while an officer spoke to the victim to learn what had transpired (see e.g. People v Erazo, 256 AD2d 16 [1st Dept 1998], lv denied 92 NY2d 1048 [1999]). The fact that the officer briefly pointed his taser at defendant when he initially failed to drop the club and bottle did not elevate the stop to an arrest (see People v Foster, 85 NY2d 1012, 1014 [1995]; People v Allen, 73 NY2d 378, 379-380 [1989]).
The court responded meaningfully to a n0te from the deliberating jury that raised issues of intoxication and intent (see generally People v Almodovar, 62 NY2d 126, 131 [1984]; People v Malloy, 55 NY2d 296, 301-302 [1982], cert denied 459 US 847 [1982]). The court properly exercised its discretion when it declined to give a simple yes or no answer, or to repeat portions of its main charge verbatim, but instead provided a carefully designed response to the jury's specific question. The record does not support defendant's claim that, in a colloquy regarding the note, the parties agreed on a particular instruction, or that the court promised to deliver such an instruction. In any event, the court "apprised counsel of the substance of its intended response" (People v Reid, 169 AD3d 602 [1st Dept 2019]), and there is nothing in People v O'Rama (78 NY2d 270, 278 [1991]) that requires the court to read whatever the parties agree to in response to a note.
We have considered defendant's arguments regarding the grand jury presentation and the form of the indictment and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 3, 2022